UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SICK BOY, LLC, | : |
| | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : C.A. No. |
| CHAINSMOKERS, INC.; CHAINSMOKERS | : |
| MERCHANDISING, LLC; CHAINSMOKERS | : |
| TOURING, LLC; LIVE NATION | : |
| ENTERTAINMENT, INC. | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff, Sick Boy LLC ("Sick Boy"), brings this action against Defendants, Chainsmokers, Inc., Chainsmokers Merchandising, LLC and Chainsmokers Touring, LLC (collectively, the "Chainsmokers") and Live National Entertainment, Inc. ("Live Nation" and with the Chainsmokers, "Defendants"), for federal trademark infringement and for federal and state unfair competition.

Sick Boy has sold t-shirts and other clothing bearing its registered trademark, SICK BOY®, since at least as early as 1999. Over the years, members of well-known bands, including Guns N' Roses, Van Halen, Ratt, Motley Crue, and Quiet Riot, have worn SICK BOY®-branded apparel, while performing on stage for tens of thousands of fans. In 2018, The Chainsmokers, an electronic dance music duo, without authorization from Sick Boy, began offering for sale and selling t-shirts and other merchandise bearing the mark, SICK BOY (the "Accused Mark"). By its Complaint, Sick Boy seeks injunctive relief and monetary damages related to Defendants' trademark infringement and unfair competition, and alleges as follows:

## PARTIES

1. Sick Boy is a South Dakota limited liability company with its principal place of business in Deadwood, South Dakota.

2. The Chainsmokers are a musical act consisting of Alex Pall and Andrew Taggart.

3. Upon information and belief, Mr. Pall and Mr. Taggart operate the Chainsmokers through several business entities related to the musical group, its tour and its merchandise.

4. Upon information and belief, Defendant Chainsmokers, Inc. is a New York corporation with its principal place of business in New York, New York.

5. Upon information and belief, Defendant Chainsmokers Merchandising, LLC is a Delaware limited liability company.

6. Upon information and belief, Defendant Chainsmokers Touring, LLC is a Delaware limited liability company.  Upon information and belief, Chainsmokers Touring, LLC is located at 209 East 31st Street, New York, New York.

7. Upon information and belief, Defendant Live National Entertainment, Inc. is a Delaware corporation with its principal place of business in Beverly Hills, California.  Live Nation bills itself as the "global leader for live entertainment" and the largest producer of live musical concerts in the world.

## JURISDICTION AND VENUE

8. This is an action for infringement of Plaintiff's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and for related claims of common law unfair competition under New York law.  This Court has jurisdiction over the Section 43(a) claims pursuant to the provisions of Section 39(a) of the Lanham Act, 15 U.S.C. § 1121.  This Court has jurisdiction over the common law claim for unfair competition

brought herein under the provisions of 28 U.S.C. § 1338(b) because that claim is joined with a substantial and related claim under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq*.

9. This Court has personal jurisdiction over Chainsmokers, Inc. by virtue of its status as a New York corporation.

10. This Court has jurisdiction over Chainsmokers Touring, LLC based on the location of its office at 209 East 31st Street, New York, New York.

11. In addition, the Court has jurisdiction over Chainsmokers Touring, LLC by virtue of its activities in New York, including concerts given by the Chainsmokers in New York at which Defendants sold merchandise in connection with the Accused Mark. For example, in August 2018 the Chainsmokers performed in Central Park. They also performed at the Rumsey Playfield in New York, New York on August 10, 2018.

12. This Court has personal jurisdiction over Defendant Chainsmokers Merchandising, LLC by virtue of its activities in New York, including concerts given by the Chainsmokers in New York at which Defendants sold merchandise in connection with the Accused Mark. For example, in August 2018 the Chainsmokers performed in Central Park. They also performed at the Rumsey Playfield in New York, New York on August 10, 2018.

13. This Court has jurisdiction over Defendant Live Nation Entertainment, Inc. by virtue of its extensive contacts promoting thousands of concerts and other events in New York. In addition, Live Nation promoted concerts for the Chainsmokers in New York.

14. Upon information and belief, Live Nation and the Chainsmokers collaborate upon, share responsibility for and split proceeds from, merchandise in connection with the Accused Mark that is offered for sale and/or sold at Chainsmokers concerts and on the

Chainsmokers website.  The Chainsmokers online store indicates that it is "powered" by Live Nation.

15. In addition to physical connections in New York, all Defendants operate an interactive website, through which residents of this state can purchase merchandise, including the merchandise with the Accused Mark.

16. Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of events giving rise to this action occurred in this District.

## FACTS

**Sick Boy and the SICK BOY® Trademark**

17. Sick Boy makes and sells t-shirts, sweatshirts, hats and other clothing items.  It offer for sale and sells its products throughout the United States.

18. Since as early as 1999, Sick Boy has promoted and sold its t-shirts, sweatshirts and other items of clothing in connection with its trademark, SICK BOY®.

19. By virtue of Sick Boy's long, continuous, and widespread use, the SICK BOY® Mark has become associated with the t-shirts and other clothing items offered by Sick Boy.

20. In addition to its rights in the SICK BOY® mark throughout the United States, and to protect the substantial goodwill associated with its clothing items, Sick Boy applied for and obtained four trademark registrations from the United States Patent and Trademark Office (the "PTO") for SICK BOY® (the "SICK BOY® Mark").  In addition, Sick Boy obtained trademark registrations for SICK BOY® in Canada and other foreign countries.

21. On November 20, 2001, the PTO granted Sick Boy a federal trademark registration for SICK BOY® (Reg. No. 2,510,347; the "'347 Registration"), for "t-shirts,

sweatshirts, jackets and hats" in Class 25.  A true and correct copy of the Certificate of Registration is attached hereto as Exhibit 1.

22. The '347 Registration is valid and subsisting.  The registration is incontestable under Section 15 and Section 33(b) of the Lanham Act, 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b), respectively.

23. The '347 Registration constitutes conclusive evidence of the validity of the registration of the mark, Sick Boy's ownership of the same, and Sick Boy's exclusive right to use the mark in commerce in connection with the associated goods.

24. Sick Boy also owns three additional federal trademarks for the SICK BOY® Mark.

25. On November 26, 2013, the PTO granted Sick Boy a federal trademark registration for SICK BOY® (Reg. No. 4,441,184) for bar and restaurant services.

26. On August 19, 2014, the PTO granted Sick Boy a federal trademark registration for SICK BOY® (Reg. No. 4,587,207) for eyewear, sunglasses, "motorcycle accessories, namely, license plate bolts, derby covers and point covers," decals, footwear and "embroidered patches for clothing."

27. On November 4, 2014, the PTO granted Sick Boy a federal trademark registration for SICK BOY® (Reg. No. 4,633,147) for "motorcycle customization services; automobile customization services; repair and maintenance of vehicles."

28. Sick Boy has spent considerable sums of money and effort developing its valuable trademark rights in the SICK BOY® Mark, which has resulted in strong, positive awareness of the mark throughout the United States.  Accordingly, the SICK BOY® Mark is a valuable commercial assets.

29. Members of bands, including Guns N' Roses, Van Halen, Ratt, Motley Crue, and Quiet Riot, have worn SICK BOY®-branded apparel, while performing on stage for thousands of fans.

**Defendants' Adoption of a Confusingly Similar Designation for Identical Products**

30. Defendants and Sick Boy both sell t-shirts and other clothing items.

31. In 2018, the Chainsmokers released a new single titled "Sick Boy."

32. Notwithstanding Sick Boy's longstanding rights in and to the SICK BOY® Mark, and its federal trademark registration for the same, on or about 2018, after the release of the single, Defendants began offering for sale t-shirts in connection with the Accused Mark.

33. In addition, Defendants offer hats and sweatshirts for sale under the Accused Mark. Plaintiff sells both hats and sweatshirts under the SICK BOY® Mark.

34. The Accused Mark is similar in sight, sound, meaning and commercial impression as the SICK BOY® Mark.

35. Additionally, Defendants use the Accused Mark in the some of the same channels of trade as apparel bearing the authorized SICK BOY® Mark.

36. A Google-search run in April 2018 for the phrase "SICK BOY clothing" returned all hits for Plaintiff, except for one, which directed consumers to the Chainsmokers online store "powered" by Live Nation.

37. The goods offered by Defendants in connection with the Accused Mark are identical to those offered by Sick Boy in connection with the SICK BOY® Mark.

38. In April 2018, Sick Boy sent the Chainsmokers a cease and desist letter. Nonetheless, the Chainsmokers continue in their unauthorized use of the Accused Mark, and to compete unfairly with Sick Boy.

39. In June 2018, Sick Boy sent Live Nation a cease and desist letter. Nonetheless, Live Nation continues in its unauthorized use of the Accused Mark, and to compete unfairly with Sick Boy.

40. As a result of Defendants' unauthorized use of the confusingly similar Accused Mark, Sick Boy has been damaged thereby. It has no adequate remedy at law.

## COUNT I
## Federal Trademark Infringement
## (Violation of 15 U.S.C. § 1114, *et seq.*)

41. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

42. Sick Boy is the owner of the '347 Registration for the SICK BOY® Mark, which is incontestable.

43. Defendants are advertising, marketing and selling their competing clothing products using a designation that is confusingly similar to the SICK BOY® Mark.

44. Through their use of the Accused Mark in commerce, Defendants have infringed and continue to infringe Plaintiff's rights in its SICK BOY® Mark, so as to create a likelihood of confusion, or to cause mistake, or to deceive the public as to the nature, source and sponsorship of Defendants' goods.

45. The unauthorized acts of Defendants in advertising and promoting goods as alleged above constitutes infringement of Sick Boy's federally registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114 *et seq.*, to the substantial and irreparable injury of Sick Boy's business reputation and goodwill.

46. The unauthorized acts of Defendants in advertising and promoting goods as alleged above were commenced and continue in spite of its actual and/or constructive knowledge

of Plaintiff's rights in the SICK BOY® Mark and Defendants' knowledge that such activity was and is in direct contravention of Plaintiff's rights.

47. Defendants' aforesaid acts have been knowing, deliberate, willful and are in disregard of Plaintiff's rights

48. Unless Defendants are enjoined from engaging in such unlawful conduct, Plaintiff will continue to suffer irreparable harm and monetary damages and there remains likelihood that the public will be misled and confused.

49. Plaintiff has been damaged thereby. It has no adequate remedy at law.

## COUNT II
### Federal Unfair Competition and False Designation of Origin
**(Violation of 15 U.S.C. § 1125(a), *et seq.*)**

50. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

51. The aforesaid acts of Defendants constitute the intentional use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; and false and misleading misrepresentations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association with Plaintiff, or as to the origin, sponsorship or approval of Defendants' goods or other commercial activities by Plaintiff.

52. The aforesaid acts of Defendants constitute the use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; and false and misleading representations of fact that in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of Defendants' goods or other commercial activities.

53. The aforesaid acts of Defendants constitute false designation of origin, false and misleading descriptions and representations and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants know, or reasonably should know, that their conduct is likely to mislead the public.

55. Defendants' aforesaid acts have been knowing, deliberate, willful, intended to cause mistake or to deceive, and are in disregard of Plaintiff's rights.

56. The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm and damage to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

57. Plaintiff has been damaged thereby. It has no adequate remedy at law.

## COUNT III
### (Common Law Unfair Competition)

58. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

59. Defendants aforesaid acts are a violation and in derogation of Plaintiff's common law rights and are likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship or quality of Defendants' goods.

60. Defendants' aforesaid acts are causing loss, damage and injury to Plaintiff and to consumers and the public.

61. Defendants know, or reasonably should know, that their conduct is likely to mislead the public.

62. Defendants' aforesaid acts have been knowing, deliberate, willful, intended to cause mistake or to deceive, and are in disregard of Plaintiff's rights.

63. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been and will be deprived of sales of products and services and has suffered a diminution of the value of its SICK BOY® Mark.

64. The aforesaid acts of Defendants have caused and continue to cause irreparable harm and damage to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

65. Plaintiff has been damaged thereby. It has no adequate remedy at law.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, Sick Boy LLC, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, Chainsmokers, Inc., Chainsmokers Merchandising, LLC, Chainsmokers Touring, LLC, and Live National Entertainment, Inc., and grant the following relief:

A. Compensatory damages sustained by Plaintiff as a result of Defendants' infringement and unfair competition, in an amount to be ascertained at trial;

B. A trebling of any and all relevant damages awarded, pursuant to 15 U.S.C. § 1117(a);

C. A temporary, preliminary and permanent injunction barring Defendants, and their officers, agents, servants, employees and all persons acting on Defendants' behalf, from engaging in any use of the Accused Mark, or any other name or mark confusingly similar to the SICK BOY® Mark, either alone or in combination with other words or symbols, as a part of any trademark, service mark, trade name, corporate name, assumed name, domain name, web site, email address, or in any other manner in connection with clothing;

D. An injunction ordering Defendants to deliver up for destruction all products, literature, signs, prints, advertising materials, catalogues, stationery and any other item bearing the Accused Mark, either alone or in combination with other words or symbols, in connection with Defendants' goods and/or services, pursuant to 15 U.S.C. § 1118;

E. An award of Plaintiff's attorneys' fees and costs; and

F. Such other and further relief that the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

>Respectfully submitted,
>
>Sick Boy, LLC,
>By Its Attorneys,
>
>/s/ *Ryan M. Gainor*
>Craig M. Scott (request for admission *pro hac vice forthcoming*)
>Ryan M. Gainor, Esq.
>Hinckley, Allen & Snyder LLP
>100 Westminster Street, Suite 1500
>Providence, Rhode Island 02903
>(401) 274-2000
>cscott@hinckleyallen.com
>rgainor@hinckleyallen.com

Dated: September 24, 2018